USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/20/09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
:
LOUIS DREYFUS COMMODITIES SUISSE S.A,   :   08-Civ-7918 (SHS)
:
                    Plaintiff,   :
:   MEMORANDUM
:   OPINION & ORDER
      -against-   :
:
RAVENNAVI S.p.A.,   :
:
                    Defendants.   :
:
------------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

    Defendant Ravennavi S.p.A. moves to vacate in part and reduce in part a maritime attachment obtained by plaintiff Louis Dreyfus Commodities Suisse S.A ("LDC"). Ravannavi contends it is entitled to partial vacatur because the plaintiff fails to state a prima facie maritime case. Additionally, defendant maintains that the amount of the attachment should be reduced because plaintiff has erroneously calculated its potential damages. Because the Court finds that plaintiff has stated a valid maritime claim, and that any disputes regarding damages must be resolved through arbitration, defendant's motion to vacate and reduce the attachment is denied.

## I. BACKGROUND

    According to the complaint, LDC entered a charter party with Ravennavi, owner of the ship "HULDER," on June 26, 2008, that called for plaintiff to charter the HULDER for a single voyage from South America to China or India. Defendant was unable to tender the ship to LDC at the time called for by the charter party, and accordingly, plaintiff was forced to find another ship—the "BETH"—for its cargo.

Plaintiff contends that, as a result of defendant's breach, it was unable to deliver the cargo on schedule, and plaintiff was compelled to agree to cargo "discounts" with its buyers, thereby suffering additional damages.

In September 2008, plaintiff commenced this action and sought an ex parte order for process of maritime attachment pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims. Plaintiff sought attachment in the amount of $1,020,700 for the differential incurred in fixing a substitute charter; $971,825 to cover cargo discounts it claims it had to offer to buyers; $498,073.10 in interest; and $150,000 in attorneys' fees, for a total amount of $2,640,598.10. After determining that the conditions for a Rule B attachment existed as set forth in the complaint, this Court entered an order authorizing process of maritime attachment and garnishment against "all tangible and intangible property" of the defendant in that amount. Plaintiff subsequently attached $2,341,271 of defendant's funds and the parties are currently in arbitration regarding the underlying dispute. (Pl.'s letter dated Oct. 24, 2008.)

As noted above, Ravennavi has now moved to vacate and reduce the attachment. Defendant contends that plaintiff's attachment of the alleged cargo damages should be vacated entirely because plaintiff has failed to state a prima facie maritime claim with regard to them for three reasons: first, because plaintiff's claims are for indemnity and thus are not ripe under English law; second, because plaintiff's claims arise out of a sales contract which is not cognizable under this Court's admiralty jurisdiction; and third, because plaintiff's cargo damages are not recognized under English law and therefore cannot be recovered in the underlying arbitration. Finally, defendant contends that

plaintiff has miscalculated the cost of fixing a substitute charter party and that the attachment should be reduced accordingly.

In response, plaintiff contends its damages are for breach of the charter party, not indemnity, and therefore were ripe as of the time of the breach. For the same reason, plaintiff contends that its damages are valid maritime claims recognizable under this Court's admiralty jurisdiction. Finally, plaintiff disputes defendant's asserted statement of English law, contending its claims for cargo damages are cognizable, and that it has correctly calculated the higher costs for fixing the substitute charter.

## II. ANALYSIS

To obtain a maritime attachment, a plaintiff must satisfy the requirements of Rule B, which provides that "[i]f a defendant is not found within the district . . . , a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the process." Admiralty Rule B(1)(a). If after reviewing a plaintiff's complaint and accompanying affidavit, a court finds the conditions of Rule B appear to exist, it must "enter an order so stating and authorizing process of attachment and garnishment." Admiralty Rule B(1)(b).

Admiralty Rule E(4)(f) affords any person claiming an interest in property that has been attached pursuant to Rule B an opportunity to contest the attachment. Upon such a request, the plaintiff bears the burden of showing that the attachment should not be vacated. Compania Sudamericana de Vapores S.A. v. Sinochem Tianjin Co., No. 06-civ-13765, 2007 U.S. Dist. LEXIS 24737 at *3 (S.D.N.Y. Apr. 4, 2007). To avoid vacatur, the plaintiff must show that: "1) it has a valid prima facie admiralty claim against the

defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment." Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006).

However, "maritime plaintiffs are not required to prove their case at this stage." SPL Shipping Ltd. v. Gujarat Cheminex Ltd., No. 06-civ-15375, 2007 U.S. Dist. LEXIS 18562, at *5 (S.D.N.Y. Mar. 15, 2007). Indeed, "a detailed discussion of the merits . . . has little bearing on the motion to vacate, which is decided based on whether a prima facie claim is shown and technical requirements for attachment have been met." Chiquita Int'l, Ltd. v. MV Bosse, 518 F. Supp. 2d 589, 597 (S.D.N.Y. 2007) (citing Aqua Stoli, 460 F.3d at 445).

The only issue in dispute here is whether LCD has stated a valid prima facie admiralty claim against Ravennavi. With regard to both the damages incurred in fixing a new charter party and the damages allegedly incurred by having to give discounts on the price of its cargo, the Court finds that plaintiff has done so.

A. Cargo Discounts

LDC contends Ravennavi breached the charter party by failing to tender the HULDER in a timely fashion, thereby causing the cargo to arrive late and plaintiff to sell its cargo at a reduced price. Neither party disputes that breach of a charter party is a maritime action, and plaintiff has stated a prima facie claim for breach of that contract.

Nevertheless, defendant makes three arguments for why LDC's claim for cargo damages is defective. None are convincing. First, defendant contends plaintiff's cargo damages are indemnity claims, and as such, are not yet ripe under English law.

Defendant is incorrect. As another Court in this district has discussed at greater length, under governing English law, where "(A) will be in a position to claim that the incurring of his liability to (B) flowed directly from an act of (C) which constituted a breach of contract between (A) and (C)" the action is for "breach of contract" and "[t]he cause of action will date from the date of breach." Bottiglieri Di Na Vigazione Spa v. Tradeline LLC, 472 F. Supp. 2d 588, 590 (S.D.N.Y. 2007) (quoting Telfair Shipping Corp. v. Intersea Carriers S.A., [1984] 2 Lloyd's Rep. 466 (The "Caroline P")).

Here, plaintiff is in the position of (A), claiming a liability to its buyers in the form of contract discounts that flows directly from the defendant's breach of a maritime contract between them. As such, plaintiff's claim is for breach of contract—i.e., breach of the charter party—and accordingly, it is ripe as of the date of Ravennavi's alleged breach.

For the same reason, defendant's second argument—that plaintiff's cargo damages arise from a sales contract and therefore are not subject to the Court's maritime jurisdiction—is equally unfounded. As noted, plaintiff's claim is for Ravennavi's breach of the parties' charter party, a claim that is indisputably within this Court's admiralty jurisdiction.

Finally, Ravennavi contends LDC's cargo damages are not recognized under English law, and accordingly, that plaintiff fails to state a prima facie maritime claim with regard to them. See Sonito Shipping Co., Ltd. v. Sun United Mar., Ltd., 478 F. Supp. 2d 532, 536-37 (S.D.N.Y. 2007) (plaintiff fails to state a prima facie maritime claim for purposes of Rule 4(B) if the claim is not recognized under the law governing the underlying dispute). In support of its position, defendant offers two declarations from

5

U.K. barrister Simon Croall, who states, in relevant part that if, as in this action, a substitute charter is entered into, "no claim for loss of profits or any other loss will be recoverable <u>provided that</u> there is an available market for either a vessel or the cargo that was to be carried." (Decl. of Simon Croall dated Dec. 23, 2008 ¶ 43(iii) (emphasis added).)

Here, however, the question of whether an available market for substitute charter was available is in dispute. Defendant contends plaintiff could have chartered a different vessel—the "BALTIC MARSHALL"—in a "timely fashion" so as to avoid having to give buyers discounts on the cargo. Plaintiff claims no such option afforded itself. Accordingly, even were the Court to fully credit Croall's interpretation of English law, that interpretation would not bar LDC's claim because its critical factual presumption— that an available market for substitute charter existed—is in dispute. As Mr. Croall himself acknowledged in his second declaration offered in this matter, "[t]he question as to whether there is or is not an available market is a question of fact. It is therefore for the Court not me." (Decl. of Simon Croall dated Feb. 10, 2009 ¶ 17.) Mr. Croall is right, in essence—the question of fact here is for the arbiter to resolve, not this Court. But because, as he notes, the existence of an available market is a question of fact, and that question of fact remains in dispute, the Court cannot conclude on the basis of the Croall declarations that plaintiff's recovery of cargo damages would be barred by English law.

Accordingly, the Court finds that plaintiff states a prima facie claim for breach of the charter party that could entitle it to relief under English law, and that there is no statutory or maritime law bar to the claim or the attachment. Such a showing is sufficient

to defeat defendant's motion to vacate the attachment. Cf. Aqua Stoli Shipping Ltd., 460 F.3d at 445.

### B. The Higher Cost of a Substitute Charter

Defendant also contends plaintiff has miscalculated the additional costs incurred by chartering the substitute vessel and that the Court should reduce the amount of plaintiff's attachment accordingly. Admiralty Rule E(6) permits a Court to "reduce the amount of security" on "good cause shown." However, to support an attachment, a "plaintiff need not prove its damages with exactitude." Dongbu Express Co. v. Navios Corp., 944 F. Supp. 235, 237 (S.D.N.Y. 1996). As long as a plaintiff's damages estimates are "not frivolous," and stem from a valid maritime claim, a court generally will not inquire further. Id.

LDC, for its part, relies on the declaration of its English legal expert, David Martin Remark, in support of its method of calculating damages. Ravennavi neither cites authority to the Court in support of its method of calculating damages, nor provides any authority in opposition to LDC's method. Its bare assertion, therefore, is insufficient to establish "good cause" to warrant a reduction. Moreover, particularly where, as here, the disagreement turns on application of English law to these facts, resolution of the dispute is for the arbitrator in the first instance, not for this Court. See Chiquita Int'l Ltd., 518 F. Supp. 2d at 597 ("The Court need not, and should not, reach the merits of the [plaintiff's] action as that is properly left to the London arbitrators to decide.").

### III. CONCLUSION

Because plaintiff has stated a prima facie maritime claim, and established that the defendant cannot be found within the district, that the defendant's property may be found

within the district, and that there is no statutory or maritime law bar to the attachment, the attachment is valid in full. Accordingly, defendant's motion to vacate or reduce the attachment is denied.

Dated: New York, New York
February 20, 2009

SO ORDERED:

Sidney H. Stein, U.S.D.J.